Walter Osuna
The Jacob D. Fuchsberg Law Firm, LLP
3 Park Avenue, 37th Floor
New York, New York 10016
(212) 869-3500
w.osuna@fuchsberg.com
*Attorneys for Plaintiff*

UNITED STATE DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ALICE SEABRON and NYAIRH ALLEN, as Proposed
Administrator of the Estate of QUANESHIA BLOODWORTH,
Deceased, and NYAIRH ALLEN, Individually,

,                                                                                         Case No.:  **5:21-cv-01052 (LEK/ATB)**

                                                    Plaintiff,                    **COMPLAINT**

            -against-

UNITED STATES OF AMERICA,

                                                    Defendant.
------------------------------------------------------------------------X

      Plaintiffs ALICE SEABRON and NYAIRH ALLEN, as Proposed Administrator of the

Estate of QUANESHIA BLOODWORTH, Deceased, and NYAIRH ALLEN, Individually, by

their attorneys THE JACOB D. FUCHSBERG LAW FIRM, LLP, as for their Complaint, allege

the following, upon information and belief:

## INTRODUCTION

1. This is an action against the defendant United States of America under the Federal Tort

    Claims Act, (28 U.S.C. § 2671, *et seq.*) and 28 U.S.C. § 1346(b)(1), for negligence and

    professional malpractice in connection with the medical care provided to plaintiff's

    decedent QUANESHIA BLOODWORTH by DAVID LANDSBERG, M.D., RUSSELL

    ACEVEDO, M.D., LEAH KAUFMAN, M.D., ROBERT SILVERMAN, M.D.,

    GEORGE STANLEY, M.D., MAUREEN BURKE, M.D., TARAKAD

1

RAMACHANDRAN, M.D., CYRIAC JOSEPH, M.D., MOHAMMAD JILANI, MBBS, and CROUSE HEALTH HOSPITAL, INC. a/k/a CROUSE HOSPITAL, each of whom is upon information and belief a Federally Qualified Health Center (FQHC) and/or FQHC employee under the Federally Support Health Centers Assistant Act.

2. The claims herein are brought against the defendants pursuant to the Federal Tort Claims Act (28 U.S.C. § 2671, *et seq.*) and 28 U.S.C. § 1346(b)(1), for money damages as compensation for personal injuries caused by the defendants' negligence and professional malpractice.

3. Plaintiffs have complied with the provision of 28 U.S.C. § 2675 of the Federal Tort Claims Act.  Annexed hereto as Exhibit 1 is a copy of the Standard Form 95.

4. Plaintiffs now timely filing this Complaint pursuant to 28 U.S.C. § 2675(d)(5) and 28 U.S.C. § 2401(b) after receiving the Department of Health and Human Services' notice of final denial of administrative claim, annexed hereto as Exhibit 2.

## PARTIES, JURISDICTION AND VENUE

5. Plaintiffs ALICE SEABRON and NYAIRH ALLEN are at all times relevant a resident of the State of New York, County of Onondaga.

6. Upon information and belief, DAVID LANDSBERG, M.D., RUSSELL ACEVEDO, M.D., LEAH KAUFMAN, M.D., ROBERT SILVERMAN, M.D., GEORGE STANLEY, M.D., MAUREEN BURKE, M.D., TARAKAD RAMACHANDRAN, M.D., CYRIAC JOSEPH, M.D., MOHAMMAD JILANI, MBBS, and CROUSE HEALTH HOSPITAL, INC. a/k/a CROUSE HOSPITAL, are each a Federally Qualified Health Center (FQHC) and/or FQHC employee under the Federally Support Health Centers Assistant Act.

7.  Upon information and belief, Defendant United States of America through its agency United States Department of Health and Human Services, operates and/or employs CROUSE HEALTH HOSPITAL, INC. a/k/a CROUSE HOSPITAL at the locations of 736 Irving Avenue, Syracuse, NY 13210, as well as DAVID LANDSBERG, M.D., RUSSELL ACEVEDO, M.D., LEAH KAUFMAN, M.D., ROBERT SILVERMAN, M.D., GEORGE STANLEY, M.D., MAUREEN BURKE, M.D., TARAKAD RAMACHANDRAN, M.D., CYRIAC JOSEPH, M.D., MOHAMMAD JILANI, MBBS (sometimes collectively "FQHC and/or FQHC employees") at that location.

8.  Defendant United States of America through the aforesaid FQHC and/or FQHC employees herein have done business in this State and/or have conducted and/or transacted business in this state, have committed one or more tortious acts within this State and/or have otherwise performed acts within and/or without this State giving rise to injuries and losses within this State, which acts subject each Defendant to the jurisdiction of this Court.

9.  Upon information and belief, at all pertinent times, Defendant United States of America owned, operated, controlled, managed and employed the aforesaid FQHC hospital and/or health care center and employed the aforesaid FQHC employees pursuant to the laws of the State of New York for the care of the sick, located at Center at the location of 736 Irving Avenue, Syracuse, NY 13210, which provided personnel, including doctors, nurses, attendants and others for the care and treatment of its patients and which held itself out to the public as furnishing treatment facilities where patients, including plaintiff's decedent QUANESHIA BLOODWORTH, could be treated for various ailments.

## AS AND FOR A FIRST CAUSE OF ACTION

10. At all pertinent times, the FQHC facility and FQHC employees held themselves out to the general public, and in particular plaintiff's decedent QUANESHIA BLOODWORTH, as a physicians and medical providers offering professional services and medical, and radiological care and treatment.

11. At all pertinent times, the FQHC facility and FQHC employees held themselves out to the general public, and in particular plaintiff's decedent QUANESHIA BLOODWORTH, as a physicians and medical providers duly licensed to practice in the State of New York and residents of same.

12. At all pertinent times, the FQHC facility and FQHC employees held themselves out to the general public, and in particular plaintiff's decedent QUANESHIA BLOODWORTH, as a physician offering professional services and medical, critical care, intensive care, obstetrical, anesthesiologic, cardiac and neurological care and treatment.

13. At all pertinent times, the FQHC facility and FQHC employees stood in such a relationship with each other in their care and treatment of plaintiff's decedent QUANESHIA BLOODWORTH as to make each liable for the acts and omissions of the other.

14. At all pertinent times, the FQHC facility and FQHC employees stood in such a relationship with Defendant United States of America in their care and treatment of plaintiff's decedent QUANESHIA BLOODWORTH as to make Defendant United States of America liable for the acts and omissions of the FQHC facility and FQHC employees.

15. At all pertinent times, the FQHC facility and FQHC employees were each employees of Defendant United States of America.

16. At all pertinent times, the FQHC facility and FQHC employees were each agents of Defendant United States of America.

17. At all pertinent times, the FQHC facility and FQHC employees were each independent contractors of Defendant United States of America.

18. From on or about August 27, 2018 through on or about September 26, 2018, and prior and subsequent thereto, plaintiff's decedent QUANESHIA BLOODWORTH sought the professional care of the FQHC facility and FQHC employees for certain medical, critical care, intensive care, obstetrical, anesthesiologic, cardiac and neurological complaints, including, but not limited to, cardiac arrest, seizures, embolism, need for critical care and need for targeted temperature management, and Defendant United States of America, through the FQHC facility and FQHC employees and their agents, servants, and employees rendered medical care, diagnosis, treatment, and services to plaintiff's decedent QUANESHIA BLOODWORTH.

19. The above medical care, diagnosis, treatment and services were rendered carelessly, unskillfully, negligently, by Defendant United States of America, through the FQHC facility and FQHC employees, and not in accordance with accepted standards of medical care, diagnosis, treatment and services in the community as the standards existed in 2018 and prior and subsequent thereto.

20. In greater particularity, Defendant United States of America through the FQHC facility and FQHC employees and their agents, servants, and employees was negligent, careless, and reckless  and committed acts of medical and professional malpractice, nonfeasance, and malfeasance as follows with regard to the care, medical care, diagnosis and treatment of Quaneshia Bloodworth in: failing to prophylax, diagnose and treat pulmonary embolism; failing to diagnose and treat cardiopulmonary arrest; failing to properly resuscitate; failing to timely establish an appropriate plan and immediately administer necessary and indicated body temperature control inclusive of therapeutic hypothermia and targeted temperature management including temperature management below 36 degrees C post-cardiac arrest including the immediate period after cardiac arrest; failing to reduce brain edema and/or herniation; failing to follow applicable rules, regulations, guidelines and protocols inclusive of Crouse Hospital's own rules, regulations, guidelines and protocols with regard to body temperature control inclusive of therapeutic hypothermia and targeted temperature management; failing to appropriately diagnose and treat infection; failing to diagnose, evaluate, follow-up and treat Quaneshia Bloodworth with regard to her signs, symptoms and complaints of pulmonary embolism; failing to diagnose, evaluate, follow-up and treat Quaneshia Bloodworth with regard to her signs, symptoms and complaints of infection; failing to timely and properly perform, refer, recommend, and/or order a C-Section; failing to timely and properly diagnose, recognize, take into account, and/or act on the recurrent decelerations, variable decelerations, late decelerations, prolonged decelerations, absent accelerations, bradycardia, prolonged bradycardia, increased risk for a traumatic delivery and injury to mother Quaneshia Bloodworth; failing to timely and properly perform, refer, recommend, implement, and/or order resuscitative measures to Quaneshia Bloodworth;

failed to timely and properly perform, refer, recommend, implement, and/or order resuscitative measures; failing to timely and properly assess the fetal position and fetal presentation; failing to timely and properly assess Quaneshia Bloodworth for cephalopelvic disproportion; failing to take a proper and adequate history, including family history; in failing to perform proper and adequate examinations; in failing to properly and adequately note and take into account patient's and fetus' signs and symptoms; performing improper, insufficient, and inadequate lab tests and studies; failing to perform the proper and necessary lab tests and studies; performing improper, insufficient, and inadequate diagnostic tests, studies, x-rays and procedures; failing to perform the proper diagnostic tests, studies, x-rays, and procedures; failing to evaluate properly the findings that had been made as a result of the histories, examinations, notes of signs and symptoms, lab tests, diagnostic tests, studies and x-rays that had been performed throughout the course of the treatment; failing to consult with and communicate information to the other physicians during the course of patient's treatment; in negligently failing to adequately observe the patient during her hospital admission; in negligently failing to adequately observe and supervise resident physicians involved in the treatment; failing to heed the significance of Quaneshia Bloodworth's past medical social, medication and/or surgical history; failing to properly perform a review of systems; failing to properly perform a complete, indicated and necessary physical examination; failing to take and chart serial vital signs; failing to make necessary and indicated notations in the patient's chart; in negligently and carelessly failing to investigate, consider, and properly assess the patient's physical condition; in negligently failing to have sufficient nursing staff to provide nursing and related services to attain and maintain the highest physical, mental and psycho-social well-being of the Quaneshia Bloodworth; failing to perform a manual

inspection and/or visual inspection of the uterine cavity following the delivery of the infant; negligently failing to timely diagnose and appropriately treat Quaneshia Bloodworth's pulmonary embolism; negligently causing Quaneshia Bloodworth's pulmonary embolism and death; negligently failing to adequately observe the patient during her presentation at the clinic and/or hospital; failing to failing to follow applicable rules and regulations, including those which pertain to care and treatment of patients with pulmonary embolism; failing to perform necessary and indicated thorough physical exam; failing to properly and timely perform necessary and indicated tests, including  ultrasound, A D-dimer test, venography testing with dye, Doppler studies, VQ scan, SPO2 monitoring, EKG, MRI, CT scan, ABG's, which were proper in light of Quaneshia Bloodworth's  signs, symptoms and complaints; failing to timely arrive at the proper differential diagnosis, which included deep venous thrombosis and pulmonary embolism, despite Quaneshia Bloodworth's signs, symptoms, and condition; failing to perform the proper and necessary lab tests and studies; performing improper, insufficient and inadequate diagnostic tests, studies, x-rays and procedures;  failing to perform the proper diagnostic tests, studies, x-rays and procedures; negligently failed to establish standards in accord with the recommendations of the Joint Commission on Hospital Accreditation; negligently failed to adhere to the standards it did establish; negligently failed to establish rules and regulations in accordance with the recommendations of the Joint Commission on Hospital Accreditation; negligently failed to follow its own rules and regulations; failing to follow its own rules and regulations, including those which pertain to obstetrical, gynecological and critical care and treatment of patients like Quaneshia Bloodworth admitted to the hospital and patients with high-risk pregnancies; failing to exercise the requisite care in hiring physicians, nurses, and other

health care personnel who failed to have the adequate training, ability, education, knowledge, and skill to treat Quaneshia Bloodworth; failing to have available adequate personnel who were properly and adequately trained in order to properly treat Quaneshia Bloodworth; failing to exercise the requisite care in hiring physicians, nurses and medical professionals, who were unqualified, poorly qualified and lacked the requisite qualifications and skills to perform the care and treatment on Quaneshia Bloodworth in a safe manner; failing to research the backgrounds and histories of the physicians, nurses and medical professionals it did hire; failing to investigate the qualifications, competence, capacity, abilities and capabilities of the physicians, nurses and other health care professionals it did hire; failing to require continuing education for its physicians, nurses and other medical professionals; negligently failed to have available adequate personnel who were properly and adequately trained in order to properly treat the patient with respect to obstetrics and gynecology; negligently failed to exercise proper and effective supervisory control over personnel; in rendering medical care and treatment in deviation from accepted standards of care, and in that the medical care and treatment rendered was rendered carelessly, negligently and unskillfully; in failing to render appropriate and adequate obstetrical, gynecological, critical care and neurologic care and treatment to the plaintiff; rendering nursing care, medical care and treatment in deviation from accepted standards of care and in that the medical care and treatment it rendered was rendered carelessly, negligently and unskillfully; hiring and retaining physicians, nurses, and other health care personnel who failed to have the adequate training, ability, education, knowledge, experience and skill of those physicians, nurses and healthcare providers in the community in the same areas of practice; failing to have available adequate personnel who

were properly and adequately trained in order to properly treat Quaneshia Bloodworth; failing to timely order and refer for consultation to indicated specialists including neurology, critical care, anesthesiology, cardiology, hematology, surgery and infectious disease consultations; failure to timely perform blood cultures and complete laboratory tests including testing for acute-phase proteins, ESR and C-Reactive protein levels; failing to administer antibiotics including intravenous antibiotics; failure to administer antifungal medicationsin negligently failing to provide the necessary services for Quaneshia Bloodworth to maintain good nutrition and hydration; in negligently failing to develop and implement an appropriate care plan for Quaneshia Bloodworth so as to allow her to attain and maintain the highest mental, physical and psycho social well-being; in negligently failing to heed and take into account information from Quaneshia Bloodworth; in failing to review old charts; in negligently failing to make Quaneshia Bloodworth aware of all those perils and dangers which would have allowed her to make an informed consent and would have allowed him to consider any alternate forms of treatment that were available; and in negligently failing to make an adequate disclosure in that Quaneshia Bloodworth was not made aware of all those known perils or dangers which would have allowed her to make an informed consent as well as any alternate forms of treatment that were available; in negligently failing to consult with and communicate information during the course of Quaneshia Bloodworth's treatment; and proximately causing and precipitating Quaneshia Bloodworth's death, premature death and wrongful death, and the injuries and damages set forth herein.

21. By reason of the above, plaintiff's decedent QUANESHIA BLOODWORTH, sustained great pain, agony, injury, suffering, disability, hospitalization, mental anguish, emotional distress and death.

22. The above medical care, diagnosis, treatment and services were rendered carelessly, unskillfully, negligently, by Defendant United States of America, through the FQHC facility and FQHC employees, and not in accordance with accepted standards of medical care, diagnosis, treatment and services in the community as the standards existed in 2018 and prior and subsequent thereto.

23. Upon information and belief, the FQHC facility and FQHC employees are each health center program grantees under 42 U.S.C. § 254b and Federally declared Health Care Centers under the Federally Support Health Centers Assistant Act.

24. Upon information and belief, the FQHC facility and FQHC employees are each Public Health Service Employees under 42 U.S.C. § 233.

25. At all pertinent Defendant United States of America, through the FQHC facility and FQHC employees held themselves out to plaintiff's decedent QUANESHIA BLOODWORTH as a provider of high quality health services, with the expertise necessary to maintain the health and safety of patients like plaintiff's decedent QUANESHIA BLOODWORTH.

26. At all pertinent times, the FQHC facility and FQHC employees were employed by and/or acting on behalf of defendant United States of America.  Furthermore, the defendant United States of America is responsible for the negligent acts of their employees and agents under respondeat superior including the negligent acts of the FQHC facility and FQHC employees.

27. This Court has jurisdiction pursuant 28 U.S.C. § 1346(b)(1).

28. Venue is proper in this Court pursuant to 28 U.S.C. § 1402(b) in that all, or a substantial part of the acts and omissions forming the basis of these claims occurred in this judicial district.

29. This action falls within one or more of the exceptions set forth in CPLR 1602, and as such the Defendants and FQHC facility and FQHC employee are jointly and severally liable pursuant to the exceptions set forth in Article 16 of the CPLR.

30. By reason of the above, plaintiff's decedent QUANESHIA BLOODWORTH sustained great pain, agony, injury, suffering, disability, hospitalization, as well as mental anguish and emotional distress, all of which caused, precipitated, and contributed to, her death on September 26, 2018.

31. By reason of the above plaintiffs ALICE SEABRON and NYAIRH ALLEN, as Proposed Administrator of the Estate of QUANESHIA BLOODWORTH, Deceased, and NYAIRH ALLEN, Individually, brings this action for the conscious pain and suffering and loss of enjoyment of life of plaintiff's decedent QUANESHIA BLOODWORTH and for economic damages, both general and special, medical, hospital and related costs, and lost wages and/or income, in an amount that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## AS AND FOR A SECOND CAUSE OF ACTION

32. Plaintiff realleges and reincorporates each and every allegation above as if fully set forth herein.

33. Defendant was negligent in hiring and supervising medical personnel, including the FQHC facility and FQHC employees, who were careless, unskillful, negligent, and who did not

possess the requisite knowledge and skill of medical professionals in the community.

34. Defendant was negligent in its extension and renewal of privileges to and/or in their hiring, supervising, and retention of medical, emergency medical, nursing, paramedic, life support personnel, physician assistants, nurses, and/or other staff and personnel, who did not possess the requisite knowledge and skill of said practitioners and specialists in the community.

35. This action falls within one or more of the exceptions set forth in CPLR 1602, and as such the defendant and the FQHC facility and FQHC employees are jointly and severally liable pursuant to the exceptions set forth in Article 16 of the CPLR.

36. Pursuant to CPLR Section 1602 (2) (iv), defendant is jointly and severally liable for all of plaintiff's decedents' damages, including by not limited to plaintiff's decedents' non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that defendants owed plaintiff's decedents a non-delegable duty of care.

37. Pursuant to CPLR Section 1602(2)(iv), defendant is jointly and severally liable for all of plaintiff's decedents' damages, including but not limited to plaintiff's decedents' non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that said defendants are vicariously liable for the negligent acts and omissions of its servants, agents, affiliated physicians, surgeons and/or employees.

38. Pursuant to CPLR Section 1602(7), defendant is jointly and severally liable for all of plaintiff's decedents' damages, including but not limited to plaintiff's decedents' non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that said defendant acted with reckless disregard for the safety of others.

39. By reason of the above, plaintiff's decedent QUANESHIA BLOODWORTH sustained great

pain, agony, injury, suffering, disability, hospitalization, mental anguish and emotional distress and ultimately death.

40. By reason of the above, ALICE SEABRON and NYAIRH ALLEN, as Proposed Administrator of the Estate of QUANESHIA BLOODWORTH, Deceased, and NYAIRH ALLEN, Individually, bring this action for the conscious pain and suffering and loss of enjoyment of life and for economic damages, both general and special, medical, hospital and related costs, and lost wages and/or income, in an amount that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## AS AND FOR A THIRD CAUSE OF ACTION

41. Plaintiffs reallege each and every allegation of the first and second causes of action.

42. Defendant, its agents, servants and employees, including the FQHC facility and FQHC employees, failed to inform plaintiff's decedent QUANESHIA BLOODWORTH, or her representatives, of the reasonably foreseeable risks and benefits of, and alternatives to, the treatment proposed and rendered, which would have been disclosed by a reasonable medical practitioner in similar circumstances, in consequence of which defendants failed to obtain an informed consent thereto.

43. A reasonably prudent person in the position of plaintiff's decedent QUANESHIA BLOODWORTH, or her representatives, would not have undergone the treatment and diagnosis rendered herein if s/he had been fully informed.

44. The lack of informed consent alleged herein is a proximate cause of the injuries, conditions and disabilities for which recovery is sought.

45. This action falls within one or more of the exceptions set forth in CPLR 1602, and as such the defendant is jointly and severally liable pursuant to the exceptions set forth in Article

16 of the CPLR.

46. Pursuant to CPLR Section 1602 (2) (iv), defendant is jointly and severally liable for all of plaintiff's decedents' damages, including by not limited to plaintiff's decedents' non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that defendant owed plaintiff's decedents a non-delegable duty of care.

47. Pursuant to CPLR Section 1602(2)(iv), defendant is jointly and severally liable for all of plaintiff's decedents' damages, including but not limited to plaintiff's decedents' non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that said defendants are vicariously liable for the negligent acts and omissions of its servants, agents, affiliated physicians, surgeons and/or employees.

48. Pursuant to CPLR Section 1602(7), defendant is jointly and severally liable for all of plaintiff's decedents' damages, including but not limited to plaintiff's decedents' non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that said defendant acted with reckless disregard for the safety of others.

49. By reason of the above, plaintiff's decedent QUANESHIA BLOODWORTH sustained great pain, agony, injury, suffering, disability, hospitalization, mental anguish and emotional distress and ultimately death.

50. By reason of the above, ALICE SEABRON and NYAIRH ALLEN, as Proposed Administrator of the Estate of QUANESHIA BLOODWORTH, Deceased, and NYAIRH ALLEN, Individually, brings this action for the conscious pain and suffering and loss of enjoyment of life and for economic damages, both general and special, in an amount that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## AS AND FOR A FOURTH CAUSE OF ACTION

51. Plaintiff realleges each and every allegation of the first, second and third causes of action.

52. That by reason of the aforesaid negligence, carelessness, recklessness, departures from good and accepted standards of care, and medical and professional malpractice, plaintiff's decedent's was caused to die on September 26, 2018.

53. That by reason of the foregoing, ALICE SEABRON and NYAIRH ALLEN, as Proposed Administrator of the Estate of QUANESHIA BLOODWORTH, Deceased, and NYAIRH ALLEN, Individually, brings this action and this cause of action for the wrongful death of plaintiff's decedent's on behalf of the surviving distributees including all children of plaintiff's decedent's including NYAIRH ALLEN who have suffered and will suffer pecuniary injuries and loss and have been deprived of said decedent's support, comfort, solace, services, companionship, guidance, advice, love, friendship, and affection, all to their damage, in an amount which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

54. This action falls within one or more of the exceptions set forth in CPLR 1602, and as such the defendant is jointly and severally liable pursuant to the exceptions set forth in Article 16 of the CPLR.

55. Pursuant to CPLR Section 1602 (2) (iv), defendant is jointly and severally liable for all of plaintiff's and plaintiff's decedent's damages, including by not limited to plaintiff's and Plaintiff's decedent's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that defendants owed plaintiff's decedents and Plaintiff's decedent's-decedent a non-delegable duty of care.

56. Pursuant to CPLR Section 1602(2)(iv), defendant is jointly and severally liable for all of

plaintiff's and Plaintiff's decedent's damages, including but not limited to plaintiff's and Plaintiff's decedent's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that said defendant is vicariously liable for the negligent acts and omissions of its servants, agents, affiliated physicians, surgeons and/or employees.

57. Pursuant to CPLR Section 1602(7), defendant is jointly and severally liable for all of plaintiff's and Plaintiff's decedent's damages, including but not limited to plaintiff's and Plaintiff's decedent's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that said defendant acted with reckless disregard for the safety of others.

58. By reason of the above, NYAIRH ALLEN, as Proposed Administrator of the Estate of QUANESHIA BLOODWORTH, Deceased, and NYAIRH ALLEN, Individually, brings this action for the wrongful death of Plaintiff's decedent's on behalf of the surviving distributees of Plaintiff's decedent's as well as other surviving distributees who have suffered pecuniary injuries and loss and have been deprived of Plaintiff's decedent's support, comfort, services, companionship, guidance, advice, love and affection, financial support and lost wages/earnings all to their damage, both general and special, in an amount which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

59. By reason of the above, NYAIRH ALLEN, as Proposed Administrator of the Estate of QUANESHIA BLOODWORTH, Deceased, and NYAIRH ALLEN, Individually, has been damaged in an amount which exceeds the jurisdictional limits of all Courts which would otherwise have jurisdiction over this action.

**WHEREFORE**, Plaintiffs demand judgment against defendants in an amount, on each cause

of action, that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction, together with the costs and disbursements of this action, including attorneys fees and interest from on or about September 26, 2018 and as allowed by law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demands judgment be entered in her favor and against the Defendant as follows:

(1) damages on each cause of action totaling $45,000,000; and

(2) costs and attorneys fees incurred in this civil litigation, together with such other and further relief at law or in equity that this Court deems just and proper.

Dated:  New York, New York
       September 21, 2021

Respectfully submitted,
THE JACOB D. FUCHSBERG LAW FIRM, LLP

By: _____
Walter Osuna
Attorneys for Plaintiffs
Office and P.O. Address
3 Park Avenue, 37th Floor
(212) 869-3500

UNITED STATE DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
ALICE SEABRON and NYAIRH ALLEN, as Proposed
Administrator of the Estate of QUANESHIA
BLOODWORTH, Deceased, and NYAIRH ALLEN,
Individually,

                      Plaintiff,

      -against-

UNITED STATES OF AMERICA,

                   Defendant.
-------------------------------------------------------------------------X

**Case No.:**

**CERTIFICATE OF
MERIT**

WALTER OSUNA, the undersigned, an attorney admitted to practice in the Courts of New

York State, states that he is an associate with The Jacob D. Fuchsberg Law Firm, LLP, attorneys

for the plaintiffs in the within action.  I have reviewed the facts of this case and have consulted

with at least one physician who is licensed to practice in this State or any other state and who I

reasonably believe is knowledgeable in the relevant issues involved in this action, and I have

concluded on the basis of such review and consultation that there is a reasonable basis for the

commencement of this action.


Dated:  New York, New York
        September 21, 2021


                            Respectfully submitted,
                            THE JACOB D. FUCHSBERG LAW FIRM, LLP


                            By: _____
                            Walter Osuna
                            Attorneys for Plaintiff
                            Office and P.O. Address
                            3 Park Avenue, 37th Floor
                            (212) 869-3500